IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE EXTRADITION | ) | |
| OF VLADIMIR KOŽELUH | ) | No. 3:21-MJ-2231-JEM |

**MEMORANDUM AND ORDER**

This case is before the Court on Vladimir Koželuh's ("Koželuh") request for release pending his extradition hearing. Koželuh filed a Memorandum in Support of Release [Doc. 14], and the Government filed a Memorandum in Support of Detention Pending Extradition [Doc. 13]. The Court held a bail hearing on February 3, 2022 [Doc. 15]. Assistant United States Attorney Casey T. Arrowood appeared on behalf of the Government. Attorney Bryan E. Delius appeared with Vladimir Koželuh, who was also present. At the conclusion of the hearing, the Court took the matter under advisement. For the reasons set forth below, the Court finds that Koželuh shall be **DETAINED** pending the extradition hearing in this matter, which is set for February 17, 2022.

**I.   Background and Nature of Proceeding**

The United States filed a Criminal Complaint against Vladimir Koželuh, which initiated extradition proceedings under 18 U.S.C. § 3184 [Doc. 3]. This Court issued an arrest warrant for Koželuh under the Treaty between the United States and Czechoslovakia for the Extradition of Fugitives from Justice, U.S.-Czech, July 2, 1925, 44 Stat. 2367, *as amended by* Supplementary Extradition Treaty between the United States of America and Czechoslovakia, U.S.-Czech, Apr. 29, 1935, 49 Stat. 3253, and Second Supplementary Treaty on Extradition between the United States of America and the Czech Republic, U.S.-Czech., May 16, 2006, S. Treaty Doc. No. 109-14 (2006) (collectively, the "Treaty"). On January 5, 2022, Koželuh was arrested and made an initial court appearance [Doc. 4]. At that time, the Court ordered him detained [*Id.*]. On January 19, 2022, Koželuh's appointed counsel moved the Court to withdraw and to substitute

counsel retained by Koželuh, which the Court granted [Doc. 11]. Koželuh also asked for a bail hearing [*Id.*], which the Court set for February 3, 2022. The parties filed briefs related to Koželuh's request for release [Docs. 13 & 14] and the Court heard argument on February 3, 2022 [Doc. 15]. During the hearing, the Government submitted exhibits for the Court's consideration [Doc. 16].

According to the Government, based upon information provided by the Government of the Czech Republic, "[u]nder Czech law, citizens of the Czech and Slovack Republic or their heirs may seek restitution for the Communist Party's confiscation of property between 1948 and 1991, the death of livestock on the property, and the property's depreciation" [Doc. 3, Affidavit to Criminal Complaint, at 3]. In or around January 1997, four siblings held three claims to seek such restitution "in the total amount of approximately CZK 3,590,230 (USD $155,694) because the former Communist government confiscated their paternal grandfather Josef Hégr's property around 1948" [*Id.*]. Wanting to sell the claims, the siblings gave Anna Hégrová—who was their father's widow as well as the mother to two of the siblings and stepmother to the other two siblings—power of attorney to represent them [*Id.*]. Hégrová, working with an attorney, located potential buyer Koželuh, and provided contracts for the siblings' signatures [*Id.*]. Pursuant to the contract, the siblings agreed to assign the claims to Koželuh for approximately eighty percent (80%) of their nominal value, which was approximately CZK 2,872,200 or USD $124,556, and Koželuh, who said he could not pay the purchase price at the time of the agreement, would pay the family after he sold the claims [*Id.* at 3–4].

Also in January 1997, the Government asserts that Koželuh entered into several contracts with members of the Hégr family [*Id.* at 3]. Under three written assignment contracts, all dated January 20, 1997, the Hégr siblings assigned each of their three claims for restitution to Koželuh in exchange for payment [*Id.*]. On January 22, 1997, Koželuh entered into a written loan agreement with Hégrová, pursuant to which she extended Koželuh credit in the amount of CZK

2

2,872,200 (the total value of the claims), which Koželuh agreed to repay within seven months (i.e., by August 22, 1997) [*Id.*]. The loan agreement was secured by a Bill to Order, also dated January 22, 1997, and also signed by Koželuh [*Id.*].

Further according to the Government, by March 5, 1997, Koželuh secured recognition by the Land Fund of the Czech Republic and the original debtors of the claims to Koželuh as the new beneficiary of the claims [*Id.*]. Under these subrogation contracts, which Koželuh signed, the Land Fund assumed the debts under the claims of each of the original debtors [*Id.* at 3–4]. On March 11, 1997, Koželuh assigned by written contract all three claims to the Agricultural Cooperative Kladruby-Vojenice for their full value of CZK 3,590,230 [*Id.* at 4]. The Land Fund registered this assignment from Koželuh to the Agricultural Cooperative [*Id.*].

According to the siblings, Hégrová made several efforts to contact Koželuh before the August 22, 1997 due date, but Koželuh never told the Hégr family that he had located a buyer for their claims [*Id.*]. Rather, they claimed, he had sent letters stating the opposite—that he had not been able to collect on the claims [*Id.*]. Specifically, they point to an August 18, 1997 letter from Koželuh to Hégrová, in which Koželuh claimed that he had not been able to collect on the claims due to bad economic circumstances and requested patience and more time to pay what he owed [*Id.*]. Soon thereafter, Koželuh paid Hégrová CZK 22,200 [*Id.* at 5], and on February 2, 1998, Koželuh sent Hégrová a letter in which he apologized and stated that due to his insolvency, the claims would be returned to her in full [*Id.*]. Hégrová died on or about February 13, 1998 [*Id.*]. According to the Government, Koželuh never paid any other compensation for the claims, returned the claims, nor told Hégrová or the siblings that he had sold or otherwise made money from the claims, and Koželuh left the Czech Republic on or about February 26, 1999 [*Id.*].

On the basis of these facts, the Government provides that, "[o]n June 2, 2008, the District Court in Mlada Boleslav, Czech Republic, convicted Koželuh of committing fraud within the

3

jurisdiction of the Czech Republic, in violation of section 250(1)(3)(b) of the 1691 Czech Criminal Code, and sentenced him to five years of imprisonment" [*Id.* at 2–3]. Later that year, the High Court in Prague affirmed Koželuh's conviction and sentence [*Id.* at 3]. Koželuh was not present for those proceedings, but he was represented throughout the proceedings by counsel [*Id.*]. The Czech District Court issued a warrant for his arrest on January 2, 2011, and made an addendum to the warrant on April 8, 2011 [*Id.*].

## II. Legal Standard

Extradition proceedings are not criminal in nature and, thus, the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, does not apply to extradition proceedings. *In re Saldana*, No. 09-MJ-00014-P, 2009 WL 2134377, at *2 (W.D. Tenn. July 10, 2009). Unlike in cases proceeding under the Bail Reform Act, which favors release of defendants pretrial, the Supreme Court has held that "bail should not ordinarily be granted in cases of foreign extradition" unless the court finds "special circumstances" warrant release. *Wright v. Henkel*, 190 U.S. 40, 63 (1903). Courts have "uniformly" interpreted *Wright* to create a presumption against bail in extradition cases, which presumption can be overcome only by a showing of special circumstances. *In re Extradition of Martinez*, No. 13-6027, 2013 U.S. App. LEXIS 26256, at *4 (6th Cir. Oct. 8, 2013); *see also United States v. Kin-Hong*, 83 F.3d 523, 524 (1st Cir. 1996); *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989); *In re Extradition of Russell*, 805 F.2d 1215, 1216 (5th Cir. 1986); *United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986).

In extradition proceedings, bail "'should be in practice an unusual and extraordinary thing.'" *In re Extradition of Russell*, 647 F. Supp. 1044, 1049 (S.D. Tex.) (quoting *United States ex rel. McNamara v. Henkel*, 46 F.2d 84, 84 (S.D.N.Y. 1912)), *aff'd*, 805 F.2d 1215 (5th Cir. 1986); *see also Beaulieu v. Hartigan*, 554 F.2d 1, 1 (1st Cir. 1977) (finding that the district court should approach bail in extradition cases "with caution"). This is because "our nation has

4

important interests in (1) fulfilling its legal and binding obligations under its treaties with foreign governments, (2) avoiding any international embarrassment if our country were unable to fulfill those obligations, and (3) preventing any circumstances that would lead to potential reciprocal noncompliance by foreign governments." *In re Extradition of Garcia*, 761 F. Supp. 2d 468, 475 (S.D. Tex. 2010); *see also Leitner*, 784 F.2d at 160. The burden, therefore, is on the extraditee to show that he should be released pending the extradition hearing. *Salerno*, 878 F.2d at 317; *United States v. Risner*, No. 3:18-mj-765-BN, 2018 WL 6809796, *7–8 (N.D. Tex. Dec. 27, 2018) (observing that the extraditee bears the heavy burden of demonstrating he should be released). In order to be released pending the extradition hearing, the extraditee must show that he is neither a flight risk nor a danger to the community and that special circumstances warrant release. *Martinez*, 2013 U.S. App. LEXIS 26256, at *4. The extraditee must show that he is not a danger or flight risk and that special circumstances exist by clear and convincing evidence. *Risner*, 2018 WL 6809796, at *8.

### III. Risk of Flight[1]

Based upon the information before it, the Court does not find that Koželuh is a flight risk. Koželuh has lived in Sevier County, Tennessee, since 1999. He has worked for hotels and restaurants in that area, and in 2004, he opened his own business, which involves cleaning and maintaining rental cabins. Koželuh became a naturalized United States citizen in 2010. He is married, and his wife, who is also a naturalized United States citizen, works with him. Koželuh's son lives in the Sevier County area with his wife and children. According to Koželuh's counsel, virtually all of Koželuh's social contacts are in the Sevier County area, and his only connections

---

[1] At the bail hearing, the Government informed the Court that it did not seek detention based on any danger to the community. Therefore, the Court considers only whether Koželuh is a risk of flight.

5

outside of the United States are in the Czech Republic.[2] He is a member of a local church and has for several years been part of an ice hockey club. He has no substance abuse issues and he does not drink alcohol. As for his criminal history, aside from the Czech case that is the basis for this extradition proceeding and a speeding ticket, Koželuh has none.

The Government argues that "by definition" Koželuh is a flight risk because he is a fugitive and evaded prosecution [Doc. 13 at 6–7]. It quotes from case law providing that, "[i]n the context of determining whether a [fugitive] poses a substantial risk of flight, there is no meaningful distinction between a person who left a country when he learned of pending charges and one who already outside that country refused to return to face these charges." *In re Extradition of Noeller*, No. 17 CR 664, 2017 WL 6462358, at *3 (N.D. Ill. Dec. 19, 2017). The Court struggles, however, to draw this conclusion in this case. While Koželuh is facing a five-year sentence in the Czech Republic, of which he is now aware, Koželuh maintains that he did not have notice of the charges brought against him until his arrest in this proceeding. *Cf. In re Extradition of Bell*, No. 21-mc-80533-UNA, 2021 WL 1616127, at *7 (S.D. Fla. Apr. 26, 2021) (finding flight risk where extraditee left foreign country "shortly after the victim reported the rape to the police" and refuses to return voluntarily); *Noeller*, 2017 WL 6462358, at *3 (finding flight risk where extraditee "left a country charging him with murder of the mother of his children"). The Court finds no evidence that Koželuh came to or remained in the United States to avoid prosecution.

For these reasons, the Court finds that Koželuh is not a flight risk. That, however, does not end the inquiry, as the Court may release Koželuh pending the extradition hearing only if it finds

---

[2] Koželuh's argument that he is unlikely to flee because he has no contacts except in the United States and the Czech Republic ignores that Koželuh could flee to any number of other places in the world, even without contacts. It does not appear that Koželuh had contacts in the United States before moving here. The Court, therefore, does not find this argument persuasive.

6

Case 3:21-mj-02231-JEM   Document 18   Filed 02/09/22   Page 6 of 14   PageID #: 706

that special circumstances warrant his release. As explained below, the Court does not find that Koželuh has met his burden to demonstrate that special circumstances exist here.

IV. **Special Circumstances**

The Supreme Court has determined that there is a presumption against bail in extradition cases, but it also explained that "special circumstances" may warrant release. *Wright*, 190 U.S. at 63. The Supreme Court did not, however, define "special circumstances." *See id.*; *Martinez*, 2013 U.S. App. LEXIS 26256, at *4.

The Sixth Circuit Court of Appeals has defined "special circumstances" as "limited to [those] situations in which the justification [for release] is pressing as well as plain." *Id.* (quoting *Kin-Hong*, 83 F.3d at 524) (internal quotation marks omitted). Other courts have similarly indicated that "special circumstances" "must be extraordinary and not factors applicable to all [extraditees] facing extradition." *Saldana*, 2009 WL 2134377, at *3 (internal quotation marks and citations omitted); *Risner*, 2018 WL 6809796, *7 (observing that "special circumstances are rare"). In other words, special circumstances exist "when the requirements of justice are absolutely peremptory." *Russell*, 647 F. Supp. at 1049 (citation and quotation marks omitted). "[T]he determination of what constitutes a special circumstance is left to the sound discretion of the trial judge." *In re Extradition of Gonzales*, 52 F. Supp. 2d 725, 736 (W.D. La. 1999).

Here, Koželuh maintains that special circumstances warrant his release. They are: (1) that Koželuh is 65 years old with a chronic thyroid issue that requires yearly testing and ongoing medication; (2) that Koželuh is facing a five-year sentence, which for him would effectively be a life sentence based upon his age and the conditions of incarceration in the Czech Republic; (3) that Koželuh needs to have in-person contact with his attorneys to meaningfully prepare for his

7

extradition hearing; and (4) that Koželuh has a high probability of succeeding in the extradition hearing [Doc. 14]. [3]

Starting with Koželuh's age and medical condition, the Court does not find that they are a special circumstance. While Koželuh is of advanced age and has a chronic thyroid issue, the Court was not presented with information that suggested his medical condition could not be treated while he is incarcerated or that his health had deteriorated while he has been in custody. *See In re Extradition of Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1301–02 (S.D. Fla. July 7, 2017) (collecting cases addressing whether age and health conditions warrant special circumstances); *In re Extradition of Kyung Joon Kim*, 04-cv-3886, 2004 WL 5782517, at *5 (C.D. Cal. July 1, 2004) (describing whether certain medical conditions constitute special circumstances).

Nor does the fact that Koželuh faces a five-year sentence in the Czech Republic, which Koželuh contends would be an effective life sentence for him given his age and the conditions of incarceration in the Czech Republic, persuade the Court that special circumstances warrant his release. All extraditees face a potential sentence for the allegations that underlie their extradition proceeding. *Saldana*, 2009 WL 2134377, at *3 (observing that "[s]pecial circumstances must be

---

[3] While counsel for Koželuh argued that Koželuh is not a risk of flight, he did not argue that Koželuh's absence of flight risk constitutes a "special circumstance." To do so would run counter to what seems to be settled law that "absence of risk of flight" does not constitute a special circumstance. *See Salerno*, 878 F.2d at 318 (noting that the absence of flight risk "is not the criteria [sic] for release in an extradition case" (citation omitted)); *Noeller*, 2017 WL 6462358, at *4 (explaining that "the absence of a defendant's risk of flight is more in the nature of a condition precedent to going forward with a determination of the existence of special circumstances that could overcome the presumption against bail" (citations and internal quotation marks omitted)); *Saldana*, 2009 WL 2134377, at *3 (observing that "[c]ourts have consistently held that the absence of flight risk is not itself a special circumstance, but rather a separate threshold determination for the court to make in deciding whether to grant bail in extradition cases" (citations omitted)); *United States v. Hills*, 765 F. Supp. 381, 386 (E.D. Mich. 1991) ("'[A]bsence of risk of flight' is not a legally cognizable 'special circumstance' to justify release on bail in extradition cases."). The Court therefore does not analyze whether absence of risk of flight constitutes a special circumstance.

extraordinary and not factors applicable to all defendants facing extradition" (citation and internal quotation omitted)). Moreover, to the extent Koželuh claims the conditions of incarceration in the Czech Republic constitute a special circumstance, the Court does not find those conditions relevant to its determination of whether he should be released pending the extradition hearing that will occur before this Court. *Cf. In re Extradition of Garcia*, 615 F. Supp. 2d 162, 173–74 (S.D.N.Y 2009) (explaining that pre-extradition, "unpleasant prison conditions do not entitle [an extradite] to be granted bail").

As for his assertion that he needs to have in-person contact with his attorneys to prepare for the extradition hearing, Koželuh maintains that communicating with his counsel via telephone has been inefficient, as he learned English late in life. He specifically notes that during his telephonic interview with the United States Probation Officer taken in advance of the bail hearing, he repeatedly needed questions explained and repeated. While telephonic communications can be challenging, courts have found that the need to consult with an attorney for purposes of preparing for an extradition hearing does not constitute a special circumstance. *See In re Extradition of Smyth*, 976 F.2d 1535, 1535–36 (9th Cir. 1992) (finding "[t]he need to consult with counsel, gather evidence and confer with witnesses, although important, is not extraordinary; all incarcerated defendants need to do these things" (citations omitted)); *Russell*, 805 F.2d at 1217 (finding that the need to consult with one's attorney concerning extradition proceedings is not a special circumstance); *In re Extradition of Perez-Cueva*, No. 16-0233M, 2016 WL 884877, at *3 (C.D. Cal. Mar. 7, 2016) (determining that "[t]he inability to assist counsel and appear at pending court proceedings are hardships faced by all incarcerated persons and do not constitute 'special circumstances' warranting release" (citation omitted)); *United States v. Tang Yee-Chun*, 657 F. Supp. 1270, 1271–72 (S.D.N.Y 1987) (finding that difficulty communicating with counsel from jail due to unusual dialect, the large number of documents to review, and the complex legal

9

issues involved did not constitute special circumstances). This Court does not have before it any facts that would persuade it to deviate from this precedent. Koželuh's hardships in this regard are much like any other litigant in the same situation.

That brings the Court to Koželuh's assertion that he has a high probability of succeeding in the extradition hearing. "Some courts have held that a 'high probability' or 'substantial likelihood' of success in defeating the anticipated foreign prosecution may appropriately qualify as a special circumstance." *In re Extradition of Taylor*, 471 F. Supp. 3d 389, 395 (D. Mass 2020) (citing cases); *but see Risner*, 2018 WL 6809796, at *12 (finding that "most courts hold that arguments regarding the substantive merits of an extradition request are properly raised at the fugitive's extradition hearing and are immaterial to his prior bail determination (citing cases)). To the extent the Sixth Circuit would recognize high likelihood of success as a special circumstance, the Court does not find, based upon the information before it, that Koželuh has demonstrated that he has a high probability or a substantial likelihood of success at the extradition hearing.

According to Koželuh, he has a high probability of succeeding in the extradition hearing because the allegations against him are conclusory and there is "scant evidence" linking him to the allegations [Doc. 14 at 4–7].[4] Koželuh claims that the documents submitted by the Government in support of the charge bear the name Vladimir Koželuh but were not verified as actually signed by the extraditee in this proceeding, that the signature purporting to be that of Koželuh is not notarized, that the letters relied upon by the Government are typed on different devices and the

---

[4] While Koželuh was convicted in the Czech Republic, he urges this Court to treat the conviction as a charge, rather than a conviction, because he was convicted in absentia. The Court will do so for purposes of its analysis of whether to release Koželuh pending the extradition hearing. *See Argento v. Horn*, 241 F.2d 258, 259 n.1 (6th Cir.) (noting that "[s]ince the Italian conviction was in absentia, the Commissioner correctly treated the case as though the appellant had been charged with and not convicted of a crime in Italy"), *cert. denied*, 355 U.S. 818 (1957); *United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1365 (S.D. Fla. 1999).

10

signatures do not appear to be the same as the one presented on Koželuh's United States passport, and that the only evidence that purports to identify the extraditee is hearsay within hearsay.

At the extradition hearing, the Court will be required to determine whether there is probable cause for the charged offense. 18 U.S.C. § 3184. "The probable cause standard applicable to an extradition hearing is the same as the standard used in federal preliminary hearings." *Hoxha v. Levi*, 465 F.3d 554, 561 (3d Cir. 2006). "[T]he magistrate's role is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction." *Id.* (internal quotations omitted); *see also In re Extradition of Robinson*, No. 3:11MJ7047, 2011 WL 6072102, at *3 (N.D. Ohio Oct. 21, 2011). Probable cause exists where "[t]he evidence presented . . . 'support[s] a reasonable belief that [the fugitive] was guilty of the crimes charged.'" *Austin v. Healey*, 5 F.3d 598, 605 (2d Cir. 1993) (quoting *Ahmad v. Wigen*, 910 F.2d 1063, 1066 (2d Cir. 1990)), *cert. denied*, 510 U.S. 1165 (1994).

As an initial matter, the Court finds that the Government's allegations and submissions are not conclusory and that there is more than "scant evidence" supporting the Government's position. The Government has submitted summaries and documentary evidence to support its assertion that there is probable cause to believe the Koželuh committed the offense for which the Czech Republic seeks extradition [Exh. 1]. Specifically, there is a Record of the Case from Judge Vladislav Tuzar of the District Court in Mlada Boleslav, who presided over the trial, as well as certified copies of documentary evidence that was presented at the trial. Within the Record of the Case, Judge Tuzar sets forth the legal background, a description of the evidence considered at trial, and his reasoning for finding guilt based upon the testimony of the Hégr family and documentary evidence submitted at the trial. This is more than "scant evidence," and it is not conclusory.

As for Koželuh's assertion that he is likely to succeed because the Government's evidence supporting extradition is based upon hearsay, the Court is not persuaded. The Court can consider

11

hearsay, even double hearsay, in making a probable cause determination. *Collins v. Loisel*, 259 U.S. 309, 317 (1922) (finding that probable cause may be based on "unsworn statements of absent witnesses"); *see also Haxhiaj v. Hackman*, 528 F.3d 282, 292 (4th Cir. 2008) (finding that "courts have consistently concluded that hearsay is an acceptable basis for a probable cause determination in the extradition context"); *Escobedo v. United States*, 623 F.2d 1098, 1102 n.10 (5th Cir.) (collecting cases and rejecting argument that a third-party report containing compound hearsay could not be used to establish probable cause), *cert. denied*, 449 U.S. 1036 (1980); *O'Brian v. Rozman*, 554 F.2d 780, 783 (6th Cir. 1977) (finding hearsay evidence was properly considered in an extradition hearing).

The Court is also not persuaded that Koželuh has a high probability of success at the extradition hearing on the basis of his argument that the documents submitted by the Government in support of the charge bear the name Vladimir Koželuh but were not verified as actually signed by the extraditee in this proceeding, the signature purporting to be that of Koželuh is not notarized, and the letters relied upon by the Government are typed on different devices and the signatures do not appear to be the same as the one presented on Koželuh's United States passport. Based upon the information before the Court, Koželuh's arguments in this regard appear to be an attempt to contradict the evidence presented. In an extradition hearing, the extraditee's ability to challenge evidence brought against him is limited. "[Koželuh] will not be able to introduce evidence that contradicts the evidence the government submits on behalf of [the Czech Republic], but may only introduce evidence that explains the submitted evidence." *Risner*, 2018 WL 6809796, at *13 (citations omitted); *see also In re Extradition of Hasani*, No. 2:14-mj-189, 2014 WL 4549232, at *3 (S.D. Ohio Sept. 12, 2014) (observing that "[e]vidence that merely contradicts the evidence submitted in support of extradition, or which merely attacks the credibility of that evidence, is insufficient; only evidence that explains the evidence submitted in support of extradition is

12

admissible" (citation omitted)); *In re Extradition of Basic*, No. 5:11-MJ-5002-REW, 2012 WL 3067466, at *2 (E.D. Ky. July 27, 2012) (finding that "[t]he Court evaluates for probable cause, and the responding party may offer 'explanatory' evidence but may not contradict probable cause through evidence offered at the hearing" (citations omitted)).

In summary, the Court returns to the high burden of proof Koželuh bears in demonstrating he has a high likelihood of success by clear and convincing evidence. For the reasons discussed above, the Court does not find that Koželuh has shown a high probability or a substantial likelihood that he will succeed at the extradition hearing. The Government presents a "prima facie case" of fraud in its pleadings and whether probable cause exists is a matter for the extradition hearing. *Garcia*, 615 F. Supp. 2d at 171 (finding that the government presented a prima facie case of plunder under the law of the Philippines and the extraditee failed to show a high probability of success on the merits); *In re Extradition of Nacif-Borge*, 829 F. Supp. 1210, 1216 (D. Nev. 1993) (rejecting special circumstance when extraditee showed "some conceivable possibility of success" but not a high probability of success on the merits). On the record before the Court, Koželuh's arguments do not demonstrate that his success at the extradition hearing is "pressing as well as plain." *Martinez*, 2013 U.S. App. LEXIS 26256, at *4.

While the Court finds that none of Koželuh's four proposed bases for relief constitute a special circumstance, the Court has also considered Koželuh's arguments regarding special circumstances collectively, and even considering Koželuh's bases in the aggregate, the Court finds that they do not amount to a special circumstance warranting Koželuh's release. *See Risner*, 2018 WL 6809796, *23 (concluding that the extraditee "failed to establish a circumstance or a combination of factors that in the aggregate, constitute a special circumstance that creates a compelling case for release on bail"). The Court finds that the presumption in favor of detention prevails in this case.

13

## V. Conclusion

Considering the record before it, the parties' submissions, and oral arguments of counsel, the Court determines that, while Koželuh is not a flight risk, Koželuh has not shown a special circumstance or a combination of special circumstances that warrant his release pending the extradition hearing. The Court, therefore, **DENIES** Vladimir Koželuh's request for release pending the extradition hearing in this matter. Koželuh shall be **DETAINED** in the custody of the United States Marshal pending the extradition hearing, which is set for February 17, 2022.

**IT IS SO ORDERED.**

ENTER:

_____
Jill E. McCook
United States Magistrate Judge